UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LF CENTENNIAL LIMITED, a British Virgin Islands corporation,<br><br>                               Plaintiff,<br><br>v.<br><br>Z-LINE DESIGNS, INC., a Nevada corporation; and DOES 1-100, inclusive,<br><br>                               Defendant. | Case No.: 16cv929 JM (NLS)<br><br>**ORDER DETERMINING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE No. 3 AND GRANTING LFCL'S MOTION TO COMPEL AND FOR SANCTIONS [Dkt. Nos. 68, 70].**<br><br>**\*\*\*REDACTED\*\*\*** |

      This is an action for breach of a Licensing Agreement that resulted from patent litigation between the predecessor of plaintiff LF Centennial, LTD (LFCL) and defendant Z-Line Designs. In the Licensing Agreement LFCL ███████████████████████████████████████████████████████████████████████████████████████ LFCL believes that not all royalties are being paid and is now suing for breach of contract and an accounting. By way of this motion LFCL seeks to (1) compel Z-Line to produce a Rule 30(b)(6) witness for deposition who is sufficiently educated and knowledgeable regarding the noticed topics to provide proper testimony; and (2) attorney's fees and costs for the deposition. For the following reasons, the court **GRANTS** LFCL's motion to compel and for sanctions.

1

**Relevant Background.**

On March 15, 2017 LFCL conducted two Rule 30(b)(6) depositions. It deposed Z-Line's CFO Marcie Martinez on six deposition topics related to the Licensed Products and payment of royalties. It also deposed Z-Line's president James Sexton regarding the purported oral agreement between Mr. Sexton and Ken Whalen, the late president of Whalen Furniture Manufacturing, Inc. (WFM), the predecessor of LFCL, where they allegedly agreed to ████████████████████████ LFCL complains that neither deponent prepared for the depositions, including by reviewing any documents. Further, as explained below, LFCL could not question Ms. Martinez about outstanding documents because they had not yet been produced.[1]

As to Ms. Martinez, she did not appear to know which of Z-Line's products were covered under the License Agreement. Dalton Decl. Ex. 5, Martinez Depo., 12:5-15:18. She testified that even though she is the one who decides whether to include certain products in the report, she could not explain why certain products were included on the spreadsheet documenting royalty payments. *Id.* at 38: 1-13; 15:16-16:11; 37: 7-25; 39:5-40:7; 40:25-42:23. As for Mr. Sexton's deposition, he testified that he did not know when the oral agreement was made, who else knew about it and whether it was ever discussed with other employees. Dalton Decl. Ex. 6, Sexton Depo., 19:2-19; 20:19-25; 30:11-18; 35:9-37:9.

Meanwhile, on March 17, 2017 the parties filed Joint Discovery Motion No. 2. Dkt. No. 56. That dispute involved a motion to compel where LFCL sought financial information necessary to determine whether Z-Line paid sufficient royalties under the Licensing Agreement. Specifically, LFCL served Requests for Production (RFPs) that asked for all documents regarding licensed products that reflect sales (No. 1), revenue (No. 2), allowances and credits (No. 3), tax and shipping charges or returns (No. 4), net

---

[1] The court notes that the depositions went forward on March 15, even without the documents, because the fact discovery cutoff was March 17, 2017.

sales amount (No. 5), and communications pertaining to those categories of documents (Nos. 6-10).  In response, Z-Line produced a 5800 spreadsheet that refers to all of its products without identifying the licensed products subject to the Licensing Agreement.  It did not produce any source documents such as purchase orders, invoices or other documents relevant to sales, revenues or the net sales amounts for the licensed products.

Z-Line generally argued that it could not produce the source documents themselves because they sold hundreds of products in large volumes and it would be burdensome to produce the invoices.  Jt. Disc. Mtn. No. 2 (Dkt. No. 56), p.13.  But they did not provide any specifics as to burden.  Instead, they focused their opposition on these points:  (1) the joint motion was filed late; (2) the spreadsheet was sufficiently responsive to allow LFCL to conduct an audit; and (3) LFCL could have authenticated the spreadsheet during the CFO's deposition.  *Id.*, pp.11-17.

The court granted LFCL's motion to compel because it found that Z-Line failed to carry its burden to show why the court should deny discovery of the highly relevant information.  The court ordered Z-Line to fully respond to RFP Nos. 1-10 by April 28, 2017.  Z-Line did not file a motion for reconsideration or Rule 72 objections with the District Judge in response to the court's order.  And it did not produce the court-ordered discovery.

**Legal Standards for Discovery.**

Parties can obtain discovery of non-privileged information so long as it

> is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Discoverable information need not be admissible. *Id.*  Once the propounding party establishes that the request seeks relevant information, "[t]he party

who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D.Cal.2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

A responding party has a duty to prepare for a Rule 30(b)(6) deposition:

> When a party receives a Rule 30(b)(6) deposition notice, it must designate a knowledgeable person to fully prepare and "unevasively answer questions about the designated subject matter." *Bd. of Trs. of the Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526 (C.D. Cal. 2008) (internal quotations omitted). "[B]ecause Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf *as to all matters reasonably available to it*, . . . the Rule 'implicitly requires persons to review all matters known or reasonably available to [the corporation] in preparation for the [Rule] 30(b)(6) deposition.'" *Id.* The deponent need not have personal knowledge of the designated subject matter. *Id.*

*F.C.C. v. Mizuho Medy Co., Ltd.*, 257 F.R.D. 679, 681 (S.D. Cal. 2009) (Stormes, J.) (emphasis in original).

**Discussion.**

**1. Additional Deposition Regarding Royalty Payments.**

Ms. Martinez was designated to testify as to these topics on behalf of Z-Line as its person most knowledgeable:

1. Z-Line Designs' sales of the "Licensed Products" (as that term is defined in the July 26, 2013 Settlement and License Agreement ("the Agreement")) in the United States from July 26, 2013 to the present.

2. Z-Line Designs' revenues from sale of the "Licensed Products…"

> 3. The royalties paid by Z-Line Designs to LF Centennial Limited and Whalen Furniture Manufacturing, Inc. relating to Z-Line's sales of the "Licensed Products…"
>
> 4. Z-Line Designs' "allowances and credits" (as discussed in paragraph 3.1 of the Agreement) relating to Z-Line's sale of the "Licensed Products…"
>
> 5. Z-Line Designs' "tax or shipping charges or returns" (as discussed in paragraph 3.1 of the Agreement) relating to Z-Line's sale of the "Licensed Products…"
>
> 6. Z-Line Designs' "net sales amount" (as discussed in paragraph 3.1 of the Agreement) relating to Z-Line's sale of the "Licensed Products…"

Dalton Decl., Ex. 2.

LFCL argues that Ms. Martinez's failure to prepare for the deposition compels a further deposition where she is adequately prepared to testify on behalf of the company. Z-Line argues that it was LFCL who was not prepared to ask questions it needed to prosecute this case. Z-Line also complains that its CFO—who testified that she created the spreadsheet that details the royalty payments—should not have been expected to testify as to what is a "Licensed Product" because the deposition notice did not list that as a topic.

According to case law in this circuit interpreting Rule 30(b)(6), LFCL is entitled to the *corporation's* knowledge from the corporation's person most knowledgeable as to the noticed topic. *See, e.g., Louisiana Pacific Corp. v. Money Market 1 Institutional Investment Dealer*, 285 F.R.D. 481, 485-486 (N.D. Cal. 2012) (stating "The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition") (citation omitted). "The designee's role is to provide the entity's interpretation of events and documents." *Id.* at 486 (citation omitted). As to scope, "the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition." *Id.* (citation and quotations omitted).

Rather, the "notice establishes the *minimum* about which the witness must be prepared to testify, not the maximum." *Id.* (emphasis added).

It is hard to imagine how Ms. Martinez, the CFO of Z-Line and the person responsible for royalty payments, would not be qualified to respond as to what is a Licensed Product. All topics noticed for this deposition refer to royalty payments based on sales of the Licensed Products. The complaint centers on whether past royalty payments were correct. *See, e.g.,* Compl. ¶ 61 (stating LFCL cannot confirm "the precise amount of royalties due to LFCL because of improper calculations of past royalties Z-Line paid to LFCL without viewing Z-Line's books and records). Given the noticed topics, this deposition appears to be—for both LFCL and Z-Line—the most important deposition in this case. Considering that Z-Line asserts that all the information LFCL needs to do an audit and calculate the royalty payments is included in the spreadsheet it provided, it is curious that when asked if she reviewed the spreadsheet before the deposition, Ms. Martinez responded, "no." Dalton Decl. Ex. 5, Martinez Depo., 16:7-9.

The court finds that LFCL's Rule 30(b)(6) notice described with reasonable particularity the topics Ms. Martinez should have prepared for the deposition. And this is LFCL's deposition, so the court is not swayed by Z-Line's proposals for how LFCL could have improved the questioning. The court finds that the lack of preparation on the part of Ms. Martinez violated Z-Line's duty to properly prepare a Rule 30(b)(6) deponent, and thus grants LFCL's request for a continued deposition on topic nos. 1-6 in the Rule 30(b)(6) deposition notice.

**2. Additional Deposition Regarding Oral Agreement.**

LFCL argues that it should get a continued deposition on the oral agreement because Mr. Sexton did not prepare for it. Z-Line argues that while he did not prepare, he did testify to the best of his knowledge as to the oral agreement and thus there is no need to continue his deposition.

As stated above, LFCL is entitled to the *corporation's* knowledge from the corporation's person most knowledgeable as to the noticed topic. Z-Line designated its

President—who allegedly had the conversation with LFCL's now deceased President—regarding the oral agreement. Not only does Mr. Sexton have personal knowledge of the oral agreement but it is also reasonable to see how, as the company's President who was party to the purported agreement, he would be designated as the person most knowledgeable on this topic. But Mr. Sexton admittedly did nothing to prepare for the *corporation's* deposition. At a minimum, he could have conversed with some of the people Z-Line asserted in an interrogatory response had knowledge of the oral agreement. Dalton Decl. Ex. 6, Sexton Depo., 35:9-37:9. Instead, when read the names "John, Marcie, Morgan and Jane Wu" from Z-Line's interrogatory response, Mr. Sexton replied that he did not know if they knew about the oral agreement. *Id.* at 37:3-9. A discussion with any of these people could have given Mr. Sexton a definitive answer as to whether they knew of the oral agreement, or might have sparked some other memory about the oral agreement. Mr. Sexton could have also searched for any documentation that may have memorialized the oral agreement. Such is the duty of the Rule 30(b)(6) witness. *Stanford*, 253 F.R.D. at 526.

> Specifically, a party must educate itself and
> > provide knowledgeable answers reasonably available to the corporation, which include information ascertainable from project files and documents in the repository, information from past employees, witness testimony and exhibits, or any other sources available to the corporation, including factual information learned through or from its counsel.

*Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008). If Mr. Sexton had prepared and then given the same answers that he had no recollection regarding who might have known about the agreement, then LFCL could take that answer as the corporation's best response. But that is not what happened here. Mr. Sexton admittedly did nothing to prepare:

> Q. Have you done anything in preparation for your deposition today to prepare yourself?

```
A.    No.
Q.    Nothing at all?
A.    Nothing.
Q.    Have you reviewed any documents?
A.    No.
Q.    Any phone records?
A.    No.
```

Dalton Decl. Ex. 6, Sexton Depo., 10:5-13.

The court finds that the lack of preparation on the part of Mr. Sexton violated Z-Line's duty to properly prepare a Rule 30(b)(6) deponent, and thus grants LFCL's request for a continued deposition on topic no. 7 in the Rule 30(b)(6) deposition notice.

**3. Request for Sanctions.**

Courts may impose, under Rule 37(d), "various sanctions for a party's failure to comply with Rule 30(b)(6)." *Great American Ins. Co.*, 251 F.R.D. at 534, 542 (citing several examples of courts imposing sanctions for failure to produce an adequately prepared Rule 30(b)(6) deponent). The court finds that limited sanctions are appropriate here based on its findings that the two Rule 30(b)(6) deponents failed to prepare for the depositions. Z-Line must reimburse LFCL for the costs and attorney's fees incurred by LFCL at the March 15, 2017 Rule 30(b)(6) depositions.[2]

**4. Production of Documents.**

LFCL filed this motion for leave to conduct further Rule 30(b)(6) depositions. Yet the heart of Z-Line's opposition is dedicated to how the court "misunderstood" and was "mislead" in Joint Discovery Motion No. 2 based on LFCL's false claims about the documents Z-Line provided. Jt. Mtn., pp.11-16. It spends more than five pages

---

[22] The court will not order that fees be paid for the March 14, 2017 non-appearances for the depositions. The court takes Z-Line's word that the travel impediments were beyond its control.

8

discussing how LFCL "inappropriately obtained [the] Order" before it addresses the subject of this dispute, the continued depositions and request for sanctions.[3]

Z-Line never asked for reconsideration of the April 6 Order and did not file Rule 72 objections to it. The court order to respond to RFP Nos. 1-5 with source documents remains in effect. These source documents must be produced before the continued deposition of Ms. Martinez.

While the question of document production is not an express issue in this motion, the court reiterates its ruling that source documents are highly relevant to the claims at issue and proportional to the needs of the case. As LFCL's expert explains:

> 73. The purpose of a royalty audit is to discover the unknown, not to prove what has been provided. …
>
> 74. A typical royalty audit requires access to, at a minimum, the following data. …:
>     i. Complete sales records for all products, not just licensed products. Such sales records must include customers, price per unit, units sold, other amounts charged on the invoice, credits and allowances offered against the sale by category.
>     ii. Financial statements.
>     iii. General ledgers.
>     iv. Inventory records including inventory roll forwards and subledgers.
>     v. Production and manufacturing records.
>     vi. Vendor agreements.
>     vii. Invoices.
>     viii. Credit memos.
>     ix. Employees for interview such as those who prepare the royalty reports and have custodianship of the records.
>     x. Detail report of all credits and allowances taken.
>     xi. Sales catalogs and other marketing materials.

---

[3] The court advises counsel for Z-Line to review Civil Local Rule 83.4 on Professionalism, and in particular the section on "Conduct to Avoid."

9

75. A royalty audit would be essentially worthless with the information that was provided by Z-Line and there is no way to identify the value of unreported sales.

LFCL's Export Report.

In contrast, Z-Line's expert says:

> *Without a compelling basis to doubt the completeness of the sales ledger reports,* which as stated above are generated from the same data source as the sales invoices and financial statements, it is reasonable to rely upon the sales ledgers and the Royalty Summary Spreadsheet to commence a productive analysis of royalties due to LF Centennial.

Z-Line's Expert Declaration ¶ 25 (emphasis added). This case is founded on the suspected incompleteness of Z-Line's reporting to LFCL. Ms. Martinez highlighted Z-Line's confusion as to what Licensed Products are subject to the royalty payment, thus giving LFCL a compelling basis to doubt the completeness of the sales ledger reports:

> Q. How do you – how do you know when an item is to be included on the report? Like does somebody tell you, "Hey, we have a new ▬▬▬"
> A. Yes.
> Q. Who tells you?
> A. Marketing.
> ***
> Q. To your knowledge, have you received from marketing a list of item names that are not included on 1.2?
> A. Yes.
> Q. And which items are those?
> A. I would have to look into it.
> Q. You did not do that today in preparation for your deposition?
> A. No.

Dalton Decl. Ex. 5, Martinez Depo., 40:25-41:5; 42:15-23.

The court's previous ruling that compels Z-Line to respond to RFP Nos. 1-5 stands, as the information is discoverable.

10

16cv929 JM (NLS)

**Order.**

For good cause shown, the court:

1. **ORDERS** Z-Line to produce the source documents in response to RFP Nos. 1-5 by **August 18, 2017**.

2. **GRANTS** LFCL's request for an order compelling Z-Line to produce a Rule 30(b)(6) witness who is sufficiently educated and knowledgeable regarding the noticed topics to provide proper testimony. The continued deposition for topic Nos. 1-6 contemplates that it will be taken after the production of source documents, and no later than **September 15, 2017**. The continued deposition for topic No. 7 must take place by **June 30, 2017**.

3. Supplemental Expert Reports that consider the to-be-produced documents must be exchanged by **September 29, 2017**. Rebuttal expert reports must be exchanged by **October 20, 2017**.

4. By **June 7, 2017**, LFCL must tell Z-Line the amount of its asserted attorney's fees and costs incurred during the March 15, 2017 depositions. Z-Line must pay that amount to counsel for LFCL by **June 21, 2017**.

The court will issue an amended scheduling order by separate order.

**IT IS SO ORDERED.**

Dated: May 31, 2017

Hon. Nita L. Stormes
United States Magistrate Judge