# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LF CENTENNIAL LIMITED,<br><br>                            Plaintiff,<br>    v.<br>Z-LINE DESIGNS, INC.,<br><br>                            Defendant. | CASE NO. 16cv0929 JM(NLS)<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING MOTION FOR PARTIAL SUMMARY ADJUDICATION |

Plaintiff LF Centennial Limited ("LFCL") moves for reconsideration of this court's June 6, 2017 Order denying Plaintiff LF Centennial Limited's Motion for Partial Summary Judgment ("Order"). Defendant Z-Line Designs, Inc. ("Z-Line") opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court grants the motion for reconsideration, grants LFCL's motion for summary adjudication on the issue of whether LFCL has the contractual right to conduct a royalty audit, and directs the parties to raise any issue relating to the scope, conditions, and terms of the royalty audit before Magistrate Judge Nita L. Stormes.[1]

**The Motion for Reconsideration**

Reconsideration is generally appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was

---
[1] The court incorporates the prior Order.

manifestly unjust, or (3) if there is an intervening change in controlling law. . . . There may also be other, highly unusual circumstances warranting reconsideration." School Dist. No. 1J, Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (citations omitted); Fed.R.Civ.P. 60(b).

The court grants the motion to reconsider the Order. The court was under the mistaken impression that the parties had generally agreed that LFCL was entitled, pursuant to the terms of the parties' Licensing and Settlement Agreement ("Agreement"), to conduct an audit, but disputed the scope, terms, and conditions related to the audit. The Order noted:

> While the parties are in general agreement that LFCL is contractually entitled to conduct an audit to ascertain the accuracy of the royalty payments at issue, the parties do not agree on the scope, terms, and conditions relevant to an audit. Moreover, the parties are involved in a discovery dispute recently resolved by Magistrate Judge Stormes. (Ct. Dkt. 78). The May 31, 2017 order resolved the discovery dispute concerning the production of source documents necessary to conduct an adequate royalty payment audit. Pursuant to that order, Z-Line has until August 18, 2017 to produce the documents.
>
> In light of the limited opposition to conducting the contractual audit, the court concludes that the evidentiary record supporting the motion for partial summary judgment is inadequate at this point in time to comprehensively resolve the issues presented. To the extent the parties dispute the scope, terms or conditions relevant to the contemplated audit, the parties are instructed to bring such disputes before Magistrate Judge Stormes.

(Order at pp.3:28 - 4:14).

The court reached its conclusion based upon the then on-going discovery dispute concerning the source documents related to the audit, and Z-Line's representation that it had agreed to an audit, but disputed certain conditions related to the audit. In its opposition brief Z-Line represented:

> LFCL also neglects to mention that from the beginning, Z-Line has agreed to an audit, and has agreed to produce documents sufficient to conduct an audit, but the parties dispute, among other things, [the time period for the audit and documents necessary to conduct an audit].

(Ct. Dkt. 71; Oppo. at p.1:6-9). Z-Line also specifically represented: "On July 25, 2014, Z-Line agreed to be audited, provided that five standard and reasonable

1  conditions are met:" (1) the audit is performed during normal business hours; (2) customer names will be redacted; (3) confidential or proprietary information will be redacted; (4) the auditor signs a confidentiality agreement; and 5) the auditor's engagement letter would be shared by both parties. (Ct. Dkt. 71; Oppo. at p. 4:2-10).

In its opposition to the motion for reconsideration, Z-Line disputes that it is obligated, under the terms of the Settlement and License Agreement, to allow LFCL to conduct a royalty audit at all. Accordingly, Z-Line definitively disputes whether LFCL is entitled to conduct a royalty audit, not just the terms and conditions related to the audit.

In sum, in light of the court's mistaken impression that the parties had generally agreed to conduct an audit, while disputing the terms and conditions of that audit, the court reconsiders the Order.

**The Motion for Summary Adjudication**

On the undisputed record, the court concludes that there is no genuine issue of material fact that the Agreement provides for an audit of royalty payments. The court also finds that the precise scope, terms, and conditions of that audit are disputed and are subject to on-going discovery disputes. To the extent the parties dispute the scope, terms or conditions relevant to the contemplated audit, the parties are instructed to bring such disputes before Magistrate Judge Stormes.

In interpreting the Agreement, the fundamental goal "is to give effect to the mutual intention of the parties." Powerine Oil Co., Inc. v. Super. Ct., 37 Cal. 4th 377, 390 (2005); Cal. Civ. Code §1636. "It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce." Winet v. Price, 4 Cal. App. 4th 1159, 1166 (1992). Thus, "[t]o avoid future disputes and to provide predictability and stability to transactions, courts attempt to interpret the parties' intentions from the writing alone, if possible." Abers v. Rounsavell, 189 Cal. App. 4th 348, 356 (2010) (citing Cal. Code Civ. Proc. § 1636). When parties dispute the meaning of language in a contract, the court must determine whether such language

is ambiguous by deciding whether it is "reasonably susceptible" to more than one of the interpretations urged by the parties. Badie v. Bank of Am., 67 Cal. App. 4th 779, 798 (1998). "An agreement is not ambiguous merely because the parties (or judges) disagree about its meaning." Abers, 189 Cal. App. 4th at 356. Instead, "words still matter" and "written agreements whose language appears clear in the context of the parties' dispute are not open to claims of 'latent' ambiguity." Id.

Broadly speaking, the parties' intentions are clear. In exchange for a license to manufacture, market, and distribute the 3-in-1 television stands and mounting products, "Z-Line agrees to pay Whalen a per Licensed Product royalty of five percent (5%) based on the net sales." (LFCL Exh. 1, ¶3.1). The Agreement resolved Z-Line's patent infringement claims, and also provided a means to verify the royalty payments. "Any audits to verify the amounts of the royalty payments will be conducted annually by an agreed upon third party accounting firm to be paid by Whalen." (Id. ¶3.2). The parties' intent is clear and unambiguous: in exchange for use of the patents, Z-Line would pay royalties and those royalty payments would be verified by audit.[2] Accordingly, the court grants summary adjudication in favor of LFCL, and against Z-Line, on the issue of whether LFCL is entitled to conduct an audit. As earlier stated, "[t]o the extent the parties dispute the scope, terms or conditions relevant to the contemplated audit, the parties are instructed to bring such disputes before Magistrate Judge Stormes." (Order at p.4:11-13).

In sum, the court grants LFCL's motion for reconsideration and grants summary adjudication in favor of LFCL on the issue of whether LFCL has the contractual right to conduct a royalty audit, and directs the parties to raise any issue relating to the scope,

---

[2] The court notes that the requirement for an audit related to licensed products is a reasonable, common commercial provision. The court also rejects Z-Line's argument that the Agreement should be given a skewed construction to mean that LFCL may "demand" an audit, but has no "right" to an audit. Moreover, for any audit to adequately assess whether LFCL is receiving a 5% royalty on net product sales, as called for in the Agreement, the audit cannot be limited to only spreadsheets and ledgers. Z-Line appears to agree given its representations that over 12,000 pages of sales and income documents (including purchase orders and invoices) have been produced in discovery.

1  conditions, or terms of the royalty audit before Magistrate Judge Nita L. Stormes.[3]

2  **IT IS SO ORDERED.**

3  DATED: August 10, 2017

4  _____
Hon. Jeffrey T. Miller
5  United States District Judge

cc: all parties

---

[3] Finally, this court declines LFCL's invitation to weigh in on the question whether "sanctions are now appropriate" for Z-Line's alleged misrepresentations to the court. (Ct. Dkt. 81 at p.10, fn3).